

**HINSHAW**

ATTORNEYS AT LAW

800 Third Avenue
13th Floor
New York, NY. 10022

Brent M. Reitter
212-471-6247
BReitter@hinshawlaw.com

212-471-6200
212-935-1166 (fax)
www.hinshawlaw.com

February 27, 2020

**VIA ECF**
Hon. Paul G. Gardephe
Southern District Of New York
United States Courthouse
40 Foley Square
New York, New York 10007

MEMO ENDORSED:

Plaintiff is directed to respond to this letter by April 20, 2020.

SO ORDERED.

*Paul␣Gardephe* (signature)

Dated: April 15, 2020

Re:   *Svennevik v. Neutron Holdings, Inc. d/b/a Lime*
       Case No. 1:20-cv-384-PGG

Dear Judge Gardephe:

The undersigned represents Defendant Neutron Holdings, Inc. d/b/a/ Lime ("Lime") in the above-referenced action. Pursuant to Your Honor's Individual Rules of Practice and the Local Rules of the Southern and Eastern Districts of New York ("L.R."), Lime respectfully submits the instant pre-motion conference letter in support of its position that the Complaint of Plaintiff Donna Svennevik ("Plaintiff") should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and that this Court should compel arbitration of Plaintiff's allegations pursuant to the Federal Arbitration Act and the Lime User Agreement and Terms of Service. Prior to submission of this letter, the undersigned contacted Plaintiff's counsel Daniel Flanzig, Esq., and asked him to consent to the relief requested. While Mr. Flanzig did not consent to the instant relief, he did state that he would reassess his position upon a review of Lime's pre-motion letter. Lime's current deadline to answer, move, or otherwise respond to the Plaintiff's Complaint is currently March 28, 2020. A such, the instant application is timely.

## FACTUAL AND PROCEDURAL HISTORY

Lime is an environmentally-friendly micro-mobility company that provides dockless bicycle and electric scooter rentals to metropolitan areas and universities around the world. Lime works cooperatively with cities and other government agencies to provide its smart mobility transportation solutions. A key component of Lime's ability to provide environmentally friendly bicycle and electric scooter rentals is proprietary technology that allows Lime, and its users, to establish and define their relationship online. Through this technology, the Plaintiff and Lime entered into a valid, enforceable contract, the terms of which are set forth in Lime's User Agreement. The User Agreement contains a clear, unambiguous arbitration provision (the "Arbitration Agreement"). The Arbitration Agreement is valid, enforceable, and binding on the Plaintiff and Lime. Plaintiff's allegations, as set forth in her Complaint, fall squarely within the Arbitration Agreement. Accordingly, when Plaintiff registered to use the Lime App and agreed to

1026691\305222216.v2

Hon. Paul G. Gardephe
February 27, 2020
Page 2

the express terms of the User Agreement, she agreed to arbitrate the claims asserted in her Complaint.

Importantly, before users can rent Lime's bikes or e-scooters, upon downloading the Lime App for the first time, users are prompted to create an account and, like most smartphone applications, are prompted to agree to Lime's User Agreement and Terms of Service. On the date that the Plaintiff registered with Lime, a prospective user would input their telephone number or use a Facebook link to populate their user information. The telephone and Facebook information inputs are located just a few millimeters above a conspicuous notice stating that "By signing up, I confirm that I'm at least 18 years old, and that I have read and agreed to Lime's **User Agreement & Terms of Service**." The words **User Agreement & Terms of Service** are in darker boldface and provide a hyperlink to the Lime User Agreement.

When users click on the conspicuous boldface hyperlink, users are directed to a webpage containing Lime's User Agreement. They very first thing that the user sees is an ALL-CAPS and bold statement explaining that riders are bound by the User Agreement and, specifically, that the User Agreement contains a binding Arbitration Agreement. In addition, Section 2.19 of the User Agreement states:

> ANY AND ALL DISPUTES ARISING BETWEEN YOU AND LIME (WHETHER BASED IN CONTRACT, LAW, STATUTE, RULE, REGULATION, ORDINANCE, TORT INCLUDING, BUT NOT LIMITED TO, FRAUD, ANY OTHER INTENTIONAL TORT OR NEGLIGENCE, COMMON LAW, CONSTITUTIONAL PROVISION, RESPONDENT SUPERIOR, AGENCY AND/OR ANY OTHER LEGAL OR EQUITABLE THEORY), WHETHER ARISING BEFORE OR AFTER THE EFFECTIVE DATE OF THIS AGREEMENT, MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION. THIS INCLUDES ANY AND ALL DISPUTES BASED ON ANY PRODUCT, SERVICE OR ADVERTISING CONNECTED TO THE PROVISION OR USE OF THE SERVICES… BY AGREEING TO ARBITRATE, EACH PARTY IS GIVING UP ITS RIGHT TO GO TO COURT AND HAVE ANY DISPUTE HEARD BY A JUDGE OR JURY.

Furthermore, the Arbitration Agreement states that the FAA, not state law, expressly governs the arbitrability of disputes between Lime and its users:

> The Federal Arbitration Act ("FAA"), not state law, shall govern the arbitrability of all disputes between Lime and You regarding this Agreement (and any Additional Terms) and the Services, including the "No Class Action Matters" Section below.

Lime's records confirm that the Plaintiff agreed to Lime's User Agreement, including the Arbitration Agreement therein, on August 11, 2018, and any other subsequent updates to the Lime User Agreement. By registering through the Lime App, Plaintiff agreed to Lime's User Agreement, and therefore agreed to arbitrate the claims contained in her Complaint.

Hon. Paul G. Gardephe
February 27, 2020
Page 3

Ignoring her Arbitration Agreement, on December 19, 2019, the Plaintiff filed a Summons and Verified Complaint in the Supreme Court of the State of New York, County of New York. Within 30 days after Lime's first notice of the Complaint, it removed the instant matter to the United States District Court for the Southern District of New York based on diversity jurisdiction. The Plaintiff did not contest Lime's removal and the time to do so has now expired.

## LEGAL CONTENTIONS

The FAA provides that an arbitration provision in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In determining whether claims are subject to arbitration, courts in this Circuit consider '(1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement.'" Plazza v. Airbnb, Inc., 289 F. Supp.3d 537, 547 (S.D.N.Y. 2018) quoting In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2011). Further, under New York law, an arbitration agreement requires a manifestation of mutual assent to sufficiently definite contract terms. See Matter of Express Indus. & Term. Corp. v. N.Y. State Dep't. of Transp., 93 N.Y.2d 584, 589, (1999) (Under New York law, "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.").

At the time that the Plaintiff signed up on the Lime App., Lime used what is referred to as a "sign-up-wrap" agreement where a user must click I agree without necessarily viewing the contract to which he/she is assenting to. New York Courts, along with Courts in this District and the Second Circuit have found these type of agreements to be valid and enforceable. Sollinger v. SmileDirectClub, LLC, No. 19-CV-5977 (JPO), 2020 U.S. Dist. LEXIS 27168, at *5 (S.D.N.Y. Feb. 18, 2020) quoting Whitt v. Prosper Funding LLC, No. 15-CV-136, 2015 U.S. Dist. LEXIS 91413, at *4 (S.D.N.Y. July 14, 2015); see also Meyer v. Uber Techs., Inc., 868 F.3d 66 (2d. Cir. 2017) (sign-up-wrap agreement found enforceable as to arbitration provision); see also Phillips v. Neutron Holdings, Inc., No. 3:18-CV-3382-S, 2019 U.S. Dist. LEXIS 171313, 2019 WL 4861435 (N.D. Texas, Oct. 2, 2019) (compelling arbitration and holding that Lime's sign-up-wrap User Agreement along with the Arbitration Agreement were valid contracts). The efficacy of a sign-up-wrap agreement was conclusively dealt with in Meyer. Therein, the Second Circuit held that "there is nothing misleading" by forcing a user to click a link and scroll through the terms of a lengthy agreement. Meyer, 868 F.3d at 79. The Second Circuit further held that where, just like in this action, the terms are "reasonably conspicuous" and the user is compelled to agree to the terms of service prior to creating an account, it cannot be disputed that the user manifested their assent to the contract. Id.[1]

By registering through the Lime App, Plaintiff and Neutron entered into a legally binding contract and an agreement to arbitrate all claims. The placement of Lime's User Agreement, while similar, is actually more conspicuous, than the user agreement discussed in Meyer, supra. Lime's

---

[1] While the Court in Meyer analyzed the arbitration provision and contract under California Law, it was clear that both California and New York Law are substantially similar and would not render a different conclusion. Meyer, 898 F.3d at 74.

Hon. Paul G. Gardephe
February 27, 2020
Page 4

User Agreement is identified in boldfaced text and is located immediately below the sign-up button. Any reasonably prudent user would certainly be on inquiry notice of such terms. Further, there is simply no dispute that the signup screen was uncluttered and that the darker color fonts would signify to a user that by signing up with the Lime App they have consented to the User Agreement and its associated Arbitration Agreement. Finally, the Plaintiff could not reserve or operate the subject bicycle she was riding at the time of her alleged accident without first consenting to Lime's User Agreement by pressing "NEXT" on the sign up screen. As such, just like the plaintiff in Meyer, Svennevik cannot possibly argue that she did not enter into a valid and enforceable arbitration agreement and that this action must be dismissed so that the parties can, if they chose, participate in arbitration.

While Lime is unsure of whether the Plaintiff will dispute the arbitrability of her claims, the Plaintiff and Lime unmistakably agreed that any issues concerning the arbitrability of her dispute is for the arbitrator to decide. The Arbitration Agreement states, "All issues are for the arbitrator to decide, including arbitrability." Additionally, the Arbitration Agreement expressly incorporates the JAMS' Streamlined Arbitration Rules and Procedures ("JAMS Rules"). Rule 8(b) of the JAMS Rules provides that:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

The express incorporation of the JAMS Rules, therefore, constitutes clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability. Brennan v. Opus Bank, 796 F.3d 1125, 1130 (D.C. Cir. 2015) ("[I]ncorporation of the AA rules constitutes clear and unmistakable evidence that contracting parties agree to arbitrate arbitrability").

Finally, it cannot be disputed that the Plaintiff's claims fall squarely within the Arbitration Agreement. Plaintiff alleges claims sounding in negligence, products liability, breach of warranty, and potential spoliation of evidence, as a result of an alleged accident that occurred while she was operating a Lime bicycle. In this case, there is no ambiguity in the Arbitration Agreement. Rather, the language of the Arbitration Agreement makes clear that each of Plaintiff's claims are subject to arbitration. As noted, Plaintiff and Lime agreed to resolve "any and all disputes" through "final and binding arbitration."

Hon. Paul G. Gardephe
February 27, 2020
Page 5

## CONCLUSION

    Lime, through the instant application, respectfully requests that the Court dismiss the Plaintiff's Complaint pursuant to Fed. R. Civ. Pro. 12(b)(1) and compel the Plaintiff to pursue her claims through arbitration based on the Lime User Agreement and the associated Arbitration Agreement.

Very truly yours,

HINSHAW & CULBERTSON LLP

By: _Brent M. Reitter (wp)_
       Brent M. Reitter

cc:    All Parties (Via ECF)